**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROBERT NEMETH, JR., | Civil Action No.: 19-16809 (FLW) |
| Plaintiff, | |
| vs. | OPINION |
| THE OFFICE OF THE CLERK OF THE NEW JERSEY SUPERIOR COURT, *et al.* | |
| Defendants. | |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff Robert Nemeth ("Plaintiff" or "Nemeth"), alleges that defendants the Office of the Clerk of the Superior Court of New Jersey, Michelle M. Smith ("Ms. Smith"), the Honorable Paul Innes ("Judge Innes") (Office of the Clerk of the Superior Court, Smith, and Innes collectively, "Judiciary Defendants[1]"), Eric S. Hausman ("Hausman"), the Law Offices of Steven A. Varano, P.C. (Hausman and Law Offices of Steven A. Varano collectively, "Law Firm Defendants"), the Middlesex County Sheriff's Department, and Middlesex County Sheriff, Mildred Scott ("Scott") (Middlesex County Sheriff's Department and Scott collectively,

---

[1]   In his opposition to Judiciary Defendants' Motion to Dismiss, Plaintiff makes clear that he has brought suit against Ms. Smith, in her individual capacity, as well as the Office of the Clerk of the Superior Court of New Jersey." *See* ECF No. 24, Pl. Opp. to Judiciary Defendants MTD, at 32. Plaintiff's claims against Judge Innes, are also brought against him in his individual capacity. *Id*. at 30. Plaintiff also challenges the Deputy Attorney General's authority to represent Ms. Smith and Judge Innes in their individual capacities. *Id*. at 3-4, 30-31. However, N.J. Stat. Ann. § 59:10A-2 plainly authorizes the Attorney General to "provide for the defense of any action brought against such State employee or former State employee on account of an act or omission in the scope of his employment." Furthermore, Plaintiff's arguments in that regard have no bearing on the resolution of Defendants' Motions.

"Middlesex County Defendants") (all defendants collectively, "Defendants") violated his Fifth[2] and Fourteenth Amendment Due Process rights in connection with a foreclosure action in New Jersey state court. Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Judiciary Defendants and Middlesex County Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on the *Rooker-Feldman* Doctrine, and absolute immunity grounds. Additionally, Judiciary Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) based on Eleventh Amendment Sovereign Immunity. Plaintiff opposes the motions. For the reasons set forth below, Defendants' Motions to Dismiss are **GRANTED**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of this motion, the Court assumes as true the relevant facts derived from Plaintiff's Complaint and the documents attached thereto.

This action stems from the foreclosure and sale of Plaintiff's residential property located at 331 Schoolhouse Road, Monroe Township, New Jersey (the "Property"). On July 20, 2012, Wells Fargo Bank ("Wells Fargo") initiated a foreclosure action against Plaintiff in New Jersey state court. On May 13, 2015, after granting summary judgment in Wells Fargo's favor, the Hon. Paul Innes of the Chancery Division of the Mercer County Superior Court entered a final judgement of foreclosure against Plaintiff and others,[3] in the amount of $371,284.90, which

---

[2] Because Defendants are all state officials, state entities, or private citizens/entities, Plaintiff may not allege a Fifth Amendment due process claim against them. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("The due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials"). Plaintiff's claim arising under the Fifth Amendment is dismissed with prejudice.

[3] There were three other defendants in the state court foreclosure matter, none of whom are a party in the instant litigation. *See* ECF No. 4-1, Final Judgment.

included the principal of the initial mortgages, plus interest and litigation fees.  *See* ECF No. 1-4,[4] "Final Judgment."  The final judgement of foreclosure bore the stamp or electronic signature of Judge Innes.  *Id*.  That same day, a Writ of Execution was filed in the Chancery Division of the Middlesex County Superior Court, which authorized the Property to be sold at a Sheriff's Sale.  *See* ECF No 1-5, "Writ of Execution".  The Writ of Execution was signed by defendant Ms. Smith, the Clerk of the Superior Court, and was purportedly witnessed by Judge Innes.  *Id*.

Plaintiff appealed the foreclosure judgement to the New Jersey Appellate Division, which affirmed the trial court's grant of summary judgment.  *See Wells Fargo Bank, N.A. v. Nemeth*, No. A-0928-15T3, 2017 WL 2920417, at *2 (N.J. Super. Ct. App. Div. July 10, 2017).  After Plaintiff's unsuccessful appeal, the Property was sold at a sheriff's sale in April 2019 and MTGLQ Investors, L.P. ("MTGLQ Investors") purchased the Property for $100.  *See* ECF No. 1-9, Sheriff's Deed of Foreclosure.  On May 8, 2019, defendant Scott, the Middlesex County Sheriff, executed a Sheriff's Deed of Foreclosure.  ECF No 1-9, Sheriff's Deed of Foreclosure.  Subsequently, Law Firm Defendants represented MTGLQ Investors in  proceedings related to obtaining a writ of possession to enforce MTGLQ Investors' rights to the Property.  On June 26, 2019, Ms. Smith executed a Writ of Possession authorizing Wells Fargo or its assignee to recover possession of the Property.  *See* ECF No. 1-7, Writ of Possession.  The Writ of Possession was purportedly witnessed by the Honorable Vincent LeBlon, P.J.Ch. of the Superior Court of New Jersey.  *Id*.  Plaintiff asserts that on July 19, 2019, a Deputy Sheriff from the Middlesex County Sheriff's Office served him with a Notice of Eviction, along with the Writ of Possession.  Compl., p. 12.

---

[4] Plaintiff's Complaint includes several attachments, which are labeled as "Annexes."  In the interest of clarity, the Court will refer to each document by its ECF Document Number.

In August 2019, Plaintiff filed the instant Complaint against Defendants. Plaintiff's claims largely involve the allegation that the relevant court documents, including the Final Judgement of Foreclosure, the Writ of Execution, and the Writ of Possession, were forgeries.[5] Specifically Plaintiff asserts 1) that the Mercer County Superior Court lacked jurisdiction over the Property, which is located in Middlesex County, New Jersey, Compl. p. 9; 2) Judge Innes' signature on the Final Judgement of Foreclosure was a forgery; 3) the Writ of Execution fraudulently lists Judge Innes as a "witness" to the signature, Compl. p 13; 3) defendant Huasman prepared and filed, and Ms. Smith signed, the Writ of Possession which also falsely identifies a sitting judge as a witness, *id*.; and 4) the Property was sold for less than its true value at a "rigged Sheriff's sale" in order to create a deficiency, Compl., p. 15. Defendants have filed three separate motions to dismiss; Plaintiff opposes all three motions.

## II.   STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(1)

---

[5]   Plaintiff's Complaint is far from a model of clarity, and it is not apparent to this Court what causes of action Plaintiff is seeking to assert against Defendants. Plaintiff's Complaint purports to assert a claim for the "[d]eprivation, [e]ncroachment and [v]iolation of Complainant's Rights Under Amendment V and/or the XIV Amendment to the United States Constitution and Inalienable Rights Re-Affirmed under Public Law 39-26." *See* Compl. p.9. In that regard, Plaintiff asserts that he "need not go to codified portions of Public Law 39-26 in order to invoke violations of his rights" and that "Plaintiff specifically is not relying on the codified portions of Public Law 39-26 but relying on the positive public law itself." Pl. Opp. Judiciary Def. MTD, at 23-24. The Court is cognizant of Plaintiff's *pro se* status, and construes Plaintiff's reference to the Fourteenth Amendment as raising due process claims. However, there is no cognizable cause of action under "Public Law 39-26," therefore that claim is dismissed with prejudice. Similarly, Plaintiff purportedly seeks "declaratory and injunctive" relief under the "First Amendment, Petition Clause, and Public Laws of the 80th Congress, 2nd Session, Ch. 646, § 2201," Compl, p. 39, but neither the Complaint's factual allegations nor Plaintiff's briefing suggest that Plaintiff has asserted a First Amendment claim. Rather, the Court construes Plaintiff's reference to the First Amendment as an acknowledgement of his right to initiate this lawsuit and seek redress of the grievances allegedly imposed upon him by Defendants.

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a proceeding for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), including lack of jurisdiction due to Eleventh Amendment immunity. As the Court of Appeals for the Third Circuit has explained "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 1 (1984)). Once a Rule 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, such as here, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id*.

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reason unable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.*

5

*Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

**III.    ANALYSIS**

### A. The *Rooker-Feldman* Doctrine

Asserting a facial challenge to subject-matter jurisdiction, Judiciary Defendants and Middlesex County Defendants contend that this Court lacks subject-matter jurisdiction over Plaintiff's Complaint based on the *Rooker-Feldman* doctrine. *See* ECF No. 15-2, Middlesex Def. MTD Br, at 20-21; ECF No. 25, Judiciary Def. MTD Br., at 17-21.

The *Rooker-Feldman* doctrine bars federal courts from hearing "controversies that are essentially appeals from state-court judgments." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (quotation marks and citation omitted). "*Rooker-Feldman* ... is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. (quotation marks and citation omitted).

In order for the *Rooker-Feldman* doctrine to deprive a federal court of subject matter jurisdiction, the Third Circuit has held that four requirements must be satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005).). The Third Circuit has also explained that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim, or whether the newly raised claims are so inextricably intertwined that a favorable decision in federal court would require negating or reversing the state-court decision." *Great W. Mining & Mineral Co.*, 615 F.3d at 165, 170 n.4; *see In re Madera,* 586 F.3d 228, 232 (3d Cir. 2009).

A federal claim is "inextricably intertwined" with an adjudicated issue in state court when either of the following two conditions are satisfied: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment ...." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). Moreover, in determining whether a claim is "inextricably intertwined" with a state court judgment, the Third Circuit has explained that "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Great W. Mining & Mineral Co.*, 615 F.3d at 167 (citations omitted); *see Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006).

Here, the first and third elements of the *Rooker-Feldman* analysis are met because Plaintiff was the "loser" in state court, and the state court judgment was completed before the instant lawsuit was filed. Nonetheless, I find that *Rooker-Feldman* does not constitute a jurisdictional bar to Plaintiff's claims, because certain aspects of Plaintiff's claims do not meet either the second or fourth elements of the *Rooker-Feldman* analysis.

Plaintiff alleges that the Mercer County Superior Court, *i.e.* Judge Innes, lacked jurisdiction over the Property, which is located in Mercer County. Any claims based on that assertion are clearly barred under *Rooker-Feldman*, because they constitute a collateral attack on the state court foreclosure judgment. In other words, Plaintiff plainly seeks to challenge the outcome of the underlying state court proceedings. *See Fraize v. Gov't Nat'l Mortg. Ass'n*, No. 14-7152, 2016 WL 958392, at *5 (D.N.J. Mar. 14, 2016) ("A federal claim that the state foreclosure court entered its judgment in the absence of personal jurisdiction is likewise barred by *Rooker-Feldman*"). Analyzing whether the state court possessed jurisdiction over the Property would essentially

8

constitute impermissible appellate review over the Chancery Court and the Appellate Division decisions finding that the foreclosure was proper. *See Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994) ("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."). Thus, to the extent Plaintiff's claims are based on the allegation that Judge Innes lacked jurisdiction over the Property, this Court lacks subject-matter jurisdiction over those claims, and they are dismissed.

However, the bulk of Plaintiff's claims involve the allegation that his constitutional rights were violated because the state court judgement was procured by fraud; that claim does not fall within the scope of the *Rooker-Feldman* doctrine. Plaintiff's alleged injury in that regard does not stem directly from the substance of the state court judgement, but rather, Defendants' allegedly fraudulent conduct. While Plaintiff's alleged injuries include the deprivation of the Property as a result of the foreclosure judgement, it is not the judgment itself which caused Plaintiff's injury; Plaintiff's claims arise from the allegedly fraudulent conduct through which the judgment was procured. *See Shibles v. Bank of Am., N.A.,* 730 F. App'x. 103, 105-06 (3d Cir. 2018) (holding that *Rooker-Feldman* did not bar Plaintiff from pursuing a common law fraud claim against bank which obtained a foreclosure judgment against her in a prior state court proceeding because plaintiff's claims were based on the bank's allegedly deceptive conduct, and thus, "the source of the injury [was] the defendant's actions," as opposed to the state court foreclosure judgment."); *Luft v. Clerk of the Superior Court of New Jersey*, No. 19-11728, 2020 WL 967857, at *5 (D.N.J. Feb. 28, 2020) (finding that second element of *Rooker-Feldman* was not satisfied where plaintiff alleged that defendants committed fraud while procuring state court foreclosure judgment, because

"it was [d]efendants' activity, not the judgments themselves, that are the source of [plaintiffs'] alleged injury."). Thus, the second element of the *Rooker-Feldman* analysis is not met.

Similarly, the fourth element is not satisfied because, although Plaintiff's claims potentially implicate the validity of the foreclosure judgement, ruling on Plaintiff's claims does not require this Court to review and reject the substance of the state court judgment. *See Luft*, No. 19-11728, 2020 WL 967857, at *5 (finding that plaintiff's claims did not implicate fourth *Rooker-Feldmman* prong even though, "much of that relief would undo the effect of the state court foreclosure judgment," because"none of [plaintiff's] requested relief asks for the Court to review or reject the foreclosure judgment itself."). Rather, Plaintiff's Complaint seeks to vindicate the alleged constitutional violations caused by the alleged forgeries, which occurred during the course of the foreclosure proceeding.

Accordingly, I find that *Rooker-Feldman*'s jurisdictional bar does not preclude Plaintiff's constitutional claims against Judiciary or Middlesex County Defendants, in this matter.

### B. Eleventh Amendment Sovereign Immunity

Judiciary Defendants assert that they are entitled to Eleventh Amendment immunity, thus this Court lacks subject matter jurisdiction over Plaintiff's claims against them. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Amendment affords states and state entities immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *See Pennhurst State School & Hosp.*, 465 U.S. at 89,100-101; s*ee also Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007)

("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought. . . .").

Because Plaintiff's claims against Judge Innes and Ms. Smith are brought against them in their individual capacities, the Eleventh Amendment does not bar those claims. *Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) ("[T]he Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties."); *see also Alden v. Maine*, 527 U.S. 706, 757 (1999)("Even a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally").

However, the Office of the Clerk of the New Jersey Superior Court is indisputably a component of the State of New Jersey and is entitled to the protections of the Eleventh Amendment. *See Robinson v. New Jersey Mercer County Vicinage-Family Div.*, 514 F. App'x 146, 149 (3d Cir. 2013) (explaining that county courts are "clearly a part of the state of New Jersey," thus, "both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment") (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005)); *see also Dongon v. Banar*, 363 F. App'x. 153, 156 (3d Cir. 2010) ("state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state."). Accordingly, the Office of the Clerk of the New Jersey Superior Court is not subject to suit, unless an exception to sovereign immunity applies.

Exceptions to sovereign immunity apply primarily in three circumstances "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for

prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002).

Under the *Ex Parte Young* doctrine, Eleventh Amendment immunity is waived when officers of a state are sued for prospective injunctive relief to end an ongoing violation of federal law. *Pa Fed'n of Sportsmen's Clubs, Inc.*, 297 F.3d at 323; *see also Ex Parte Young*, 209 U.S. 123, 159-60 (1908). In order for the *Ex Parte Young* exception to be applicable, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 506 (3d Cir. 2001). To determine whether application of the doctrine is appropriate, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc.*, 297 F.3d at 323 (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 5353 U.S. 635, 645 (2002)).

Here, the *Ex Parte Young* doctrine is inapplicable to Plaintiff's claims. As an initial matter, Plaintiff's Complaint seeks monetary damages, in the amount of $1 million per claim, against each Defendant, presumably including the Office of the Clerk of the New Jersey Superior Court. *See* Compl., IX. Furthermore, although Plaintiff's Complaint also purportedly seeks injunctive relief, the requested relief would not be prospective because Plaintiff seeks to have this Court decree that the state court judgments related to the foreclosure are unconstitutional, which falls outside the scope of the *Ex Parte Young* doctrine. *See Rich v. New Jersey*, No. 14-2075 FLW, 2015 WL 2226029, at *9 (D.N.J. May 12, 2015) (finding that the *Ex Parte Young* doctrine was inapplicable because Plaintiffs were "in sum, asking for a declaration from this Court that the conduct allegedly done by Defendants was discriminatory."); *Heine v. Comm'r of The Dep't of Cmty. Affairs of the*

*State of New Jersey*, No. 2:11-5347, 2016 WL 7042069, at *7 (D.N.J. Dec. 1, 2016) ("Even a claim that nominally seeks injunctive or declaratory relief will not circumvent the Eleventh Amendment prohibition if, in its actual substance, it seeks retrospective relief."). Here, Plaintiff has not asserted that there is a continuing violation of the law that he seeks to redress, such that his claim could fall within the *Ex Parte Young* doctrine. Accordingly, Plaintiff's claims against the Office of the New Jersey Superior Court are dismissed for lack of subject matter jurisdiction, on the basis of Eleventh Amendment Sovereign Immunity.[6]

### C. Judicial Immunity and Quasi-Judicial Immunity

Judge Innes, a retired superior Court judge, and Ms. Smith, the Clerk of the Superior Court, both assert that they are entitled to judicial, and quasi-judicial immunity, respectively, on Plaintiff's claims against them. Judiciary Defendants MTD Br. at 17-21. Similarly, Middlesex County Defendants assert that they are entitled to judicial immunity, because their actions were taken pursuant to the Writ of Execution issued by the Superior Court. Middlesex Def. MTD Br, at 21-24. I find that these Defendants are immune from suit based on these doctrines.

Absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts. *See Dongon v. Banar,* 363 F. App'x 153, 155 (3d Cir. 2010) ("[J]udges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity.") (citing *Briscoe v. LaHue,* 460 U.S. 325, 334 (1983)). "A judge will not be deprived of immunity because the action []he took was in error, was done maliciously, or was

---

[6] In addition to Plaintiff's arguments on the merits, Plaintiff contends that Judiciary Defendants' motion to dismiss should be denied because a motion to dismiss is not a "responsive pleading" and cannot be filed at this phase of the litigation. Pl. Opp. to Judiciary Defendants MTD, at 6. Plaintiff is patently incorrect. The Federal Rules of Civil Procedure permit a defendant to assert defenses based on lack of subject matter jurisdiction and failure to state a claim in a pre-answer motion to dismiss. *See* Fed. R. Civ. P. 12(b),(h)(2).

in excess of [his] authority ...." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). The immunity is not vitiated by "allegations of malice or corruption of motive." *Gromek v. Maenza,* 614 F. App'x 42, 45 (3d Cir. 2015) (quoting *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). There are two exceptions to absolute judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11-12. "Determining whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Gallas*, 211 F.3d at 768–69 (internal citations and quotation marks omitted).

Like judges, court administrators and sheriffs who carry out activities, which are "an integral part of the judicial process" and are "charged with the duty of carrying out facially valid court orders," are also entitled to immunity and "enjoy quasi-judicial immunity from liability for damages in a suit challenging conduct prescribed by that order." *Addlespurger v. Corbett*, 461 F. App'x 82, 85–86 (3d Cir. 2012). Even when sued in their individual, rather than their official capacities, such individuals may receive the benefit of quasi-judicial immunity. *Hamilton v. Leavy*, 322 F.3d 776, 782–783 (3d Cir. 2003)

Here, each of Plaintiff's arguments against the application of judicial immunity are unavailing. First, Plaintiff asserts that because Judge Innes has retired, and is being sued in his "individual capacity," he is not entitled to absolute judicial immunity. *See* Pl. Opp. to Judiciary Defendants MTD. At 30. Plaintiff is mistaken. Judicial immunity extends to suits in judges' individual capacities, namely suits for damages, as Plaintiff seeks here. *See Larsen v. Senate of the Commonwealth*, 152 F.3d 240, 249 (3d Cir. 1998). Further, that Judge Innes retired subsequent

14

to issuing the orders at issue is irrelevant; judges retain absolute immunity for actions taken within their judicial capacity. *See Leverett v. Carchman*, No. 09-1903, 2010 WL 606041, at *6 (D.N.J. Feb. 18, 2010) (dismissing claims against retired judge based on judicial immunity); *Reardon v. New Jersey*, No. 13-5363, 2014 WL 2921030, at *4 (D.N.J. June 27, 2014) (same). Finally, Plaintiff asserts that immunity cannot attach because Judge Innes lacked jurisdiction to hear a foreclosure matter involving a property located in Middlesex County. However, Judiciary Defendants correctly argue that under New Jersey's Court Rules, Judge Innes was authorized to hear all uncontested foreclosure actions in New Jersey, including the foreclosure at issue, irrespective of the county in which the Property was located. *See* N.J. Ct. R. 1:34-6(a) (authorizing the Chief Justice of the New Jersey Supreme Court to designate a superior Court judge to review the Office of Foreclosure's disposition of all uncontested foreclosure matters); *see* ECF No. 22-2, Certification of Michael T. Moran, Ex A, Foreclosure Case Summary (indicating that defendant Nemeth's answer was stricken and thus the foreclosure was unopposed.)[7]. Thus, there is no basis to find that Judge Innes was acting in the clear absence of jurisdiction such that he should be stripped of judicial immunity.

      The crux of Plaintiff's complaint is conduct that occurred during the course of the foreclosure litigation, a judicial proceeding. Plaintiff challenges the procedures utilized by Judiciary Defendants, namely the use of a signature stamp or electronic signature to sign Judge Innes' name on the final Judgement of foreclosure, and Ms. Smith's attestation that Judge Innes

---

[7]     The Court takes judicial notice of the docket foreclosure case summary from the state court proceeding. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, [courts] may consider documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." (internal citations and quotation marks omitted)(second alteration in original)).

and Judge Leblon witnessed the signing of the Writ of Possession and Writ of Execution, respectively. In that regard, Judiciary Defendants argue that employees of the Office of Foreclosure are authorized to use Judge Innes's electronic or signature stamp after Judge Innes has approved an uncontested foreclosure. *See* Judiciary Def. MTD Br. at 10.  Notably, Plaintiff's own Complaint asserts facts which acknowledge that the signatures are not frauds or forgeries but rather products of procedures routinely utilized by the Office of Foreclosure. *See* Compl., ECF No 1-2, Transcript of Motion Hearing in *Dietech Financial v. Karen Barel*; ECF No. 1-3, Transcript of Telephone Call between Ariel Barel and Office of Foreclosure.[8]  While Plaintiff's Complaint is rife with allegations of fraud and forgery, in essence, Plaintiff seeks to assert that his constitutional rights were violated by virtue of the procedures utilized in executing the relevant judicial orders. *Mireles*, 502 U.S. at 13 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge ...."). Thus, Plaintiff seeks redress for deeds which were clearly "judicial acts" and to which judicial and quasi-judicial immunity attach.

Plaintiff's claim against Middlesex County Defendants are similarly insufficient to strip those defendants of quasi-judicial immunity. Taking as true Plaintiff's allegations that the Writ of Execution and Possession were both somehow invalidated by the use an electronic signature, Middlesex County Defendants are nonetheless entitled to quasi-judicial immunity for taking action pursuant to what was reasonably perceived as a valid judicial directive." *Villarreal v. New Jersey*, No. 19-1426, 2020 WL 864143, at *3 (3d Cir. Feb. 21, 2020) (affirming district court's finding

---

[8]   In support of his claims that the relevant orders were not signed by judges but rather by clerks in the Office of Foreclosure, Plaintiff's Complaint recounts portions of transcripts which were purportedly submitted as evidence in an unrelated and unidentified proceeding in district court. *See* Compl. p. 2.

that county sheriff was entitled to quasi-judicial immunity "for enforcing foreclosure judgment and conducting the sale of foreclose property" despite plaintiff's claim that sale was unlawful); *Conklin v. Anthou*, 495 F. App'x 257, 264 (3d Cir. 2012) (affirming district court's finding that sheriff was entitled to quasi-judicial immunity in connection with Sheriff's sale because the sale was at the direction of a "*facially* valid court order."). Although Plaintiff also alleges that the April 24, 2019 sheriff's sale was "rigged" Plaintiff has not alleged any support for that contention, aside from the price of the sale. Plaintiff's conclusory allegations regarding the value of the property are insufficient to overcome the application of quasi-judicial immunity.

Accordingly, Plaintiff's claims against Judiciary and Middlesex County Defendants are dismissed because those defendants are entitled to judicial and quasi-judicial immunity.

### D. Plaintiff's Claims Against the Law Firm Defendants

Law Firm Defendants move to dismiss based on Rule 12(b)(6), arguing that Plaintiff has not provided any factual assertions in support of his "bald allegations" that Law Firm Defendants fraudulently obtained the Writ of Possession for the Property. Def. Br. at 8-9. These defendants argue that they complied with all applicable New Jersey court rules, laws and procedures, and highlight New Jersey Court Rule 1:32-2A(c) which permits the use of the use of electronic signatures. I agree.

First, Plaintiff's Complaint purportedly seeks to assert constitutional claims against Law Firm Defendants; although Plaintiff has not identified a statutory basis for those claims, presumably they are brought pursuant to 42 U.S.C. §1983 ("Section 1983"). *See* Compl. p. 34 ("on June 26, 2019 and every day to the present, Defendant Law Offices of Steven A. Varano, PC and its actions deprive Complainant of constitutional protections of due process of law afforded to Complainant under the V and/or the XIV Amendments to the United States Constitution[.]").

17

Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights. *See Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996); However, to recover against a defendant under Section 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws. *See Groman v. Twp. of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995). "The color of state law ... is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." *Id*. at 638. The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." *Lugar v. Edmonson Oil Co*., 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State: (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State, or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible; and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. *See id*. at 936–39.

Here, Plaintiff's claims against Law Firm Defendants are dismissed because Plaintiff has not alleged that Law Firm Defendants were state actors or acting "under color of law." Generally, attorneys performing "their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc*., 184 F.3d 268, 277 (3d Cir. 1999). Here, the attorneys in this case were performing their required functions on behalf of their client, and filed a motion for a writ of possession pursuant to the applicable New Jersey Court Rules and statutes. Law Firm Defendants' mere participation in the litigation process did not transform them into state actors, and thus, Plaintiff's claims against them are dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's claims against all Defendants are dismissed **WITH PREJUDICE**.

Date:  May 19, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge
